UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LEWIS A. GOLDEN, ) | CASE NO. 3:18CV227 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE JEFFREY J. HELMICK |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| ACTING COMMISSIONER OF SOCIAL ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, ) | OF MAGISTRATE JUDGE |
| ) | |
| Defendant. ) | |

Plaintiff Lewis A. Golden ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") failed to properly evaluate the mental health opinions and to account for all of their limitations in determining his mental residual functional capacity ("MRFC"). ECF Dkt. #11. For the following reasons, the undersigned recommends that the Court AFFIRM the decision of the ALJ and dismiss the instant case in its entirety with prejudice.

I. **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff protectively filed applications for DIB and SSI on November 22, 2013 alleging disability beginning October 8, 2013 due to a stroke that affected his right side, high blood pressure, problems with speech and memory, insomnia, and sleep apnea. ECF Dkt. #10 ("Tr.") at 72, 222-245.[2] The Social Security Administration ("SSA") denied his applications initially and upon

---

[1] On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

reconsideration. *Id.* at 72-127, 131-140. Plaintiff requested a hearing before an ALJ, and the hearing was held on January 9, 2017. *Id.* at 32, 145-146.

On February 8, 2017, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Tr. at 15-26. Plaintiff filed a request for review of the ALJ's decision before the Appeals Council, but the Appeals Council denied that request on December 11, 2017. *Id.* at 1-9. On January 29, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On May 7, 2018, Plaintiff filed a brief on the merits, and Defendant filed her merits brief on July 20, 2018. ECF Dkt. #s 11, 14. On August 3, 2018, Plaintiff filed a reply brief. ECF Dkt. #15.

## II. RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A. Relevant Medical Evidence

The undersigned points out that Plaintiff's claims of ALJ error concern only his mental health conditions. ECF Dkt. #11. Thus, a review of the medical evidence concerning Plaintiff's physical health is not necessary, except to note that Plaintiff suffered a transient ischemic attack ("TIA") and cerebral vascular accident ("CVA") on October 8, 2013 and was hospitalized for a month. Tr. at 317. His coordination was abnormal on December 5, 2013 and he had right hemiparesis. *Id.* Plaintiff was in physical therapy from January 2014 through July 2014 and notes indicate that he had a gait problem, back pain that worsened with ambulation, abnormal muscle tone and coordination, right lower extremity weakness, edema, and tenderness. *Id.* at 767-1202, 1233, 1241, 1280.

Concerning his mental health, Plaintiff cites to the psychological evaluation that was conducted by Dr. Wuebker, Ph.D. on Apil 15, 2014 at the request of the agency. Tr. at 690. At the evaluation, Plaintiff informed Dr. Wuebker that he had a high school diploma, but he had attended both regular and special education classes and earned above average grades. *Id.* at 691. He also had one and one half years of college education. *Id.* Plaintiff reported that he had prior work as a factory welder and a sheet metal worker, and he last worked in March of 2013. *Id.* He explained that the job ended due to a lack of work. *Id.* He also indicated that since his CVA, he could not think well or stay as focused as he had before. *Id.*

-2-

Dr. Wuebker noted that Plaintiff was 100% understandable in his speech and he found that Plaintiff "did not otherwise display language impairment, receptively or expressively." Tr. at 692. Plaintiff reported to Dr. Wuebker that he had problems finding words and he was not as fast as he used to be. *Id.* He also stated that he had no mood or anxiety issues, and Dr. Wuebker found no evidence of a thought disorder. *Id*. at 693. Dr. Wuebker further found that Plaintiff was oriented to time, place and situation, and testing showed that Plaintiff was in the: 50th percentile on the WAIS-IV information subtest; 37th percentile in the WAIS-IV Digit Span subtest; 16th percentile for Similarities subtest on the WAIS-IV; average range on the WMS-IV Visual Memory Index; low average range in Visual Working, Immediately and Delayed Memory Index scores; and in the borderline range in the Auditory Memory Index. *Id*. at 692-693. Plaintiff's overall full-scale IQ was 87 on the WAIS-IV, which was indicative of low average intellectual functioning. *Id.* at 693.

Dr. Wuebker also found that Plaintiff had adequate insight and judgment and was aware of his cognitive issues. Tr. at 694. Plaintiff scored in the 16th percentile on the WAIS-IV Comprehension subtest. *Id.* After reconciling the test results, Dr. Wuebker found that Plaintiff's general cognitive ability was within the low average range of intellectual functioning; his verbal and nonverbal reasoning skills, verbal comprehension, ability to sustain attention, concentration and mental control were in the average range; and his ability to process simple or routine visual material without making errors was in the borderline range. *Id*. at 695-696.

In conclusion, Dr. Wuebker diagnosed Plaintiff with mild neurocognitive disorder, and he opined that Plaintiff was in the low average range in understanding, remembering and carrying out instructions. Tr. at 699. He found that Plaintiff had "some issues" with pace, concentration and attention, and he opined that, "[i]t would be likely his cognitive issues would likewise impact his abilities in performing multi-step tasks." *Id.* Dr. Wuebker further opined that Plaintiff exhibited no attitudes or behaviors that would indicate problems getting along with supervisors and co-workers, and he would be able to "respond mentally and emotionally appropriately to work setting pressures commensurate to his abilities.' *Id.* at 700.

The only other record cited by Plaintiff as support for his asserted claim of ALJ error is to the assessment of state reviewing psychologist Dr. Hill, who reviewed the medical evidence at the

-3-

reconsideration stage on August 23, 2014 and found that Plaintiff had a mild restriction in his daily living activities, no difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. Tr. at 103. She further opined that Plaintiff was not significantly limited or there was no evidence to support a limitation in: remembering locations and work-like procedures; understanding, remembering, and carrying out very short and simple instructions; sustaining an ordinary routine without special supervision; working near others without being distracted by them; making simple work-related decisions; socially interacting; being aware of hazards; traveling to unfamiliar places or using public transportation; or in setting realistic goals and making plans independently of others. *Id.* at 107-108. Dr. Hill additionally opined that Plaintiff was moderately limited in: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods of time; in performing activities within a schedule, maintaining regular attendance, or being punctual; in responding appropriately to changes in the work setting; and in completing a normal workday or workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 106-107,

In explaining Plaintiff's moderate limitations concerning detailed instructions, Dr. Hill indicated that Plaintiff had borderline range auditory memory and returning to work would likely cause fatigue and lead to slightly increased memory problems. Tr. at 107. She opined that Plaintiff was able to understand, remember and follow 1-4 step tasks. *Id.* She also opined that Plaintiff may need extra time and repetition in learning new things or may require hands-on demonstrations. *Id.* In explaining her moderate limitations for Plaintiff in sustaining concentration and persistence, Dr. Hill referred to Plaintiff's WAIS-IV PSI score of 79 and indicated that he would work at a slower than average pace and fatigue would be a factor due to the CVA, which could decrease attention and processing speed. *Id.* at 108. Dr. Hill opined that Plaintiff would be able to perform 1-4 step tasks with no more than moderate pace or production quotas. *Id*. She further indicated that "[o]verall, his MH-mental health] condition did not impose more than minimal limitations on his functioning at this time." *Id.*

### B.     Relevant Testimonial Evidence

At the ALJ hearing, Plaintiff testified that he was 45 years old, 6'3" tall, 350 pounds, and he lived with his girlfriend. Tr. at 36. When the ALJ asked Plaintiff to describe the problems that kept him from working full-time, he testified that the stroke that he suffered caused right leg and arm problems, impacted his stamina and thought process, and left him with an inability to understand what people told him. *Id*. at 37-38.

After discussing his physical problems and restrictions, Plaintiff's counsel inquired about his verbal issues, such as problems finding the words to communicate with other people, feeling like he was drunk and slurring his words, and his inability to remember things, even on a short-term basis. Tr. at 47-48. Plaintiff testified that he could not remember multi-step directions or things that people told him. *Id*. He indicated that he could no longer take care of his backyard pool or run errands for his girlfriend because he forgets the steps to caring for the pool or the items that his girlfriends tells him to get. *Id*. at 52-53.

The ALJ then questioned the vocational expert ("VE"). Tr. at 55. He asked the VE to consider whether a hypothetical person of Plaintiff's age, education and work experience could perform light level jobs with the MRFC to perform low-stress jobs, defined as having occasional decision-making required, occasional changes in the work setting, and with no strict production quotas. *Id*. at 56-58. The VE testified that such a hypothetical individual with the physical and environmental limitations, as well as the MRFC described above, could not perform Plaintiff's past relevant work, but could perform other jobs existing in significant numbers in the national economy, such as the jobs of bench assembler, inspector and sorter. *Id.* at 57-58.

The ALJ modified his hypothetical individual to include the prior limitations and a sit/stand option provided that the hypothetical individual is not off-task more than 10% of the work period. Tr. at 58. The VE testified that this hypothetical person could still perform the jobs that she identified, except that the numbers would be eroded by about 20%. *Id*. at 58-59.

The ALJ changed the hypothetical individual to that of the second hypothetical person but with an exertional level of sedentary work. Tr. at 59. The VE testified that this hypothetical individual could perform the jobs of sorter, bench assembler and surveillance system monitor. *Id*.

The ALJ asked whether the hypothetical individual from the first hypothetical person he presented could perform jobs with the added limitation of being off-task more than 20% of the work period, and the VE responded that no jobs would be available for such an individual. Tr. at 50-51. The VE explained that employers would tolerate an employee being off-task 20% of the workday, which was inclusive of breaks and lunch. *Id*. The VE also responded to the ALJ's question concerning absences that employers would tolerate one to two unscheduled absences per month, but no more than 15 days per year. *Id.* 59-60.

Plaintiff's counsel then questioned the VE. Tr. at 60. They discussed the various requirements for the jobs identified by the VE. *Id*. at 60-62. They also discussed the sit/stand requirements for all of the jobs identified by the VE and the ability to reason, remember instructions, and language development requirements of those jobs. *Id*. at 63-66.

### III.  SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In his February 8, 2017 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 8, 2013, his alleged disability onset date, and that since that date, Plaintiff had the following severe impairments: obesity; status post CVA with right hemiparesis; neurocognitive disorder; right ankle disorder, hypertension; and lower extremity tendinitis. Tr. at 17. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* at 18-20.

The ALJ addressed the assessment of agency examining psychologist Dr. Wuebker, assigning partial weight to his April 2014 opinion and explaining that while his assessment was consistent with his evaluation, the limitations that Dr. Wuebker opined were vague in their restrictions. Tr. at 24. The ALJ also addressed the assessment of agency reviewing psychologist Dr. Hill, assigning her August 2014 assessment greater weight than earlier assessments because it was more recent and considered more of the record. *Id.* at 19-20.

After considering the evidence, the ALJ found that Plaintiff had the RFC to perform sedentary work with the following limitations: no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crawling and crouching;

occasional operation of bilateral lower foot controls; frequent use of bilateral upper extremities for reaching, handling, and fingering; avoidance of all exposure to hazards, such as unprotected heights, or dangerous moving machinery; work in low-stress jobs only, defined as jobs with occasional decision making, occasional changes in work setting, and no strict production quotas; and a sit/stand option where the claimant can sit or stand alternatively at will provided that he is not off-task more than 10% of the work period . *Id*. at 20-24.

Based upon Plaintiff's age, education, work experience, the RFC and the VE's testimony, the ALJ determined that Plaintiff could not perform his past relevant work as a sheet metal worker, duct installer or furnace installer, but he could perform jobs existing in significant numbers in the national economy, such as the occupations of a sorter, bench assembler, or surveillance system monitor. Tr. at 24-25.  In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and was not entitled to DIB or SSI. *Id.* at 26.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## VI. LAW AND ANALYSIS

In his sole claim of error, Plaintiff asserts that the ALJ failed to properly evaluate the opinions of agency psychologists, Drs. Wuebker and Hill, when he found that their opinions were

-8-

consistent with the record, yet failed to incorporate many of their limitations in his MRFC. ECF Dkt. #11 at 5-9. Plaintiff cites to the psychologists' opinions that he would have problems with performing multi-step tasks, he had difficulties maintaining attention and concentration, and he may need extra time, repetition, and hands-on demonstrations for learning new tasks. *Id*.

The undersigned notes that Dr. Wuebker and Hill are both agency psychologists. As Plaintiff points out, state agency consultants are highly qualified specialists and experts in Social Security disability evaluation. ECF Dkt. #11 at 6; Social Security Ruling ("SSR") 96–6P, 1996 WL 374180. The regulations require that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii).

However, an ALJ is not required to explain why he favored one examining opinion over another as the "good reasons" rule requiring an ALJ to explain the weight afforded a treating physician's opinion does not apply. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006). Moreover, ALJs are not bound by the findings of a state agency psychologist, "but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p.

In addition, a claimant's RFC is an assessment of the most that a claimant "can still do despite [his] limitations." 20 C.F.R. §§ 416.945(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 416.945(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. §§ 416.945(a)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5. SSR 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess his or her work-related

-9-

abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, a need for a structured living environment and work evaluations. *Id*.

The undersigned recommends that the Court find that the ALJ applied the proper legal standards in evaluating the assessments of Dr. Wuebker and Dr. Hill. In reviewing the opinions of these psychologists and formulating his MRFC, the ALJ specifically referenced the proper regulations and SSRs, including 20 C.F.R. §§ 404.1527, 416.967, and SSR 96-6P. The undersigned notes that the treating physician rule does not apply here as neither of the psychologists are a treating source. Further, although an ALJ must consider opinions from all medical sources as to a claimant's RFC and MRFC, "the final responsibility for deciding these issues is reserved to the Commissioner" and no special significance is given to medical source opinions on issues reserved to the Commissioner, such as the MRFC. 20 C.F.R. § 404.1527(d)(2) and (e); 416.927 (d)(2) and (e).

The ALJ specifically considered the opinions of both Dr. Wuebker and Dr. Hill in this case. Tr. at 19, 22, 24. He specified the weight that he gave to the opinions of these agency psychologists, assigning partial weight to Dr. Wuebker's opinion, and greater weight to Dr. Hill's opinion. *Id*. at 20, 24. The ALJ explained his treatment of these opinions in determining Plaintiff's MRFC, finding that while Dr. Wuebker's assessment was consistent with his evaluation of Plaintiff, the assessment was "somewhat vague in its restrictions." Tr. at 24. As to Dr. Hill's opinion, the ALJ assigned her assessment greater weight and explaining that he did so because her assessment was most recent and had considered more of the record than the other assessments. *Id*. at 24. Based upon this, the undersigned recommends that the Court find that the ALJ applied the proper legal standards in reviewing the opinions of Drs. Wuebker and Hill and determining Plaintiff's MRFC.

The undersigned further recommends that the Court find that substantial evidence supports the ALJ's weight assignment and his explanations for not including all of the limitations opined by Drs. Wuebker and Hill in his MRFC. As to his decision not to include a multi-step exclusion in Plaintiff's MRFC based upon Dr. Wuebker's opinion, the ALJ correctly found that Dr. Wuebker's

-10-

opinion concerning Plaintiff's attention, concentration, persistence and pace in performing multi-step tasks was vague as to its restrictions. Dr. Wuebker indicated that while Plaintiff maintained attention, concentration, persistence and pace throughout his testing, his processing speed score during testing suggested that he would have issues with these abilities and "[i]t would appear likely his cognitive issue would likewise impact his abilities in performing multi-step tasks." Tr. at 699. Dr. Wuebker provided no further elaboration on this "likely" impact or otherwise indicate the number of steps that Plaintiff could likely perform without such an impact occurring. Moreover, the ALJ did limit Plaintiff as he determined that Plaintiff could perform sedentary work with the added restrictions to low stress jobs that required only occasional decision making, occasional changes in the work setting, and most importantly, no strict production quotas. *Id.* at 20. In addition, the undersigned notes that Dr. Hill had opined that Plaintiff was able to perform 1-4 step tasks with no more than a moderate pace or production quotas. *Id*. at 108. The ALJ's MRFC for Plaintiff corresponded to this opinion. Accordingly, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision not to include a further restriction of Plaintiff's MRFC as to multi-step tasks.

As to Dr. Hill's restrictions, the ALJ is correct that she was an agency reviewing and not an agency examining psychologist. Tr. at 24, 108. Moreover, the ALJ did incorporate some of Dr. Hill's mental health limitations in his MRFC for Plaintiff when he limited Plaintiff to only occasional decision-making, occasional changes in the work setting, and to no strict production quotas. Tr. at 20. Dr. Hill had opined that Plaintiff could understand, remember and follow 1-4 step tasks, but would work at a slower than average pace, fatigue would be a factor due to the CVA, and attention and processing speed would decrease with fatigue. *Id*. at 108. The ALJ limited Plaintiff's production pace in his MRFC and limited him to sedentary work.

However, Dr. Hill also indicated that Plaintiff may need extra time and repetition for new learning, including hands-on demonstrations for new learning. Tr. at 107. Plaintiff complains that the ALJ erred by failing to include this in his MRFC. ECF Dkt. #11 at 8. Substantial evidence supports the ALJ's determination not to do so, as Dr. Hill indicated these limitations not as requirements, but rather as possibilities, as she wrote that Plaintiff "may need" these additional

steps. And Dr. Hill did not provide further explanation as to when Plaintiff may need these additional instructions. Accordingly, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision to not include Dr. Hill's indication that Plaintiff may need extra time repetition and hands-on demonstrations in his MRFC for Plaintiff.

Based upon the above, the undersigned recommends that the Court find that the ALJ applied the proper legal standards in reviewing the opinions of Drs. Wuebker and Hill and in determining Plaintiff's MRFC. The undersigned further recommends that the Court find that substantial evidence supports the ALJ's assessment of the opinions of Drs. Wuebker and Hill and his MRFC for Plaintiff.

## VII. CONCLUSION AND RECOMMENDATION

For the above reasons, the undersigned recommends that the Court AFFIRM the decision of the ALJ and dismiss the instant case in its entirety with prejudice.

Date: February 28, 2019        */s/George J. Limbert*
                                GEORGE J. LIMBERT
                                UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).